# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED AIR LINES, INC. ) | |
| ) | |
| Appellant, ) | |
| ) | Case No. 04 C 2839 |
| v. ) | |
| ) | Honorable John W. Darrah |
| HSBC BANK USA, as paying agent; and ) | |
| CITY AND COUNTY OF DENVER, ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court of March 30, 2004, by United Air Lines, Inc. The bankruptcy court granted summary judgment, ruling *inter alia*, that purported leases held by United were in fact financing agreements for purposes of applying the bankruptcy code. For the reasons that follow, the decision of the bankruptcy court is affirmed.

## BACKGROUND

On October 1, 1992, United and the City of Denver ("the City") entered into the Special Facilities and Ground Lease ("the Lease"). Under the Lease, the City leases to United an aircraft maintenance facility, a ground equipment maintenance facility, a flight kitchen, an air freight facility, and other support facilities (collectively, "the Facilities") as well as the ground on which the Facilities are located ("the Ground"). The Lease defines the entirety of the property being leased to United -- the "Leased Property" – as "the Ground" and "the Facilities." The Lease is for a term of

thirty-one years, with a contingent option for an extension of nine additional years. United's use of the Leased Property is restricted solely to the uses permitted by the Lease during the term of the Lease.

Under Article VI of the Lease, United is obligated to pay both "Facilities Rentals" and Ground Rentals" as part of its lease payments. United is obligated to pay Ground Rentals directly to the City on a monthly basis in an original amount equivalent to $0.49 per square foot of the Ground, with provisions in the Lease for adjustments in that amount. Ground Rentals are defined under the Lease as "the payments to be made by [United] pursuant to Section 6.2 of the Lease with respect to [United]'s use, under the Lease, of the Ground."

In conjunction with the Lease, the City issued special facilities revenue bonds. United applied the proceeds from the sale of the bonds to construct facilities at the Denver Airport. This was accomplished by Ordinance No. 712 of the City of Denver, which provided: for the issuance and sale of tax exempt bonds by the City; for a "paying agent" to receive the proceeds of the sale of the bonds for purposes of funding construction of the facilities; and for the paying agent to receive the Facilities Rentals from United under the Lease for purposes of debt service on the bonds and their ultimate redemption. The bonds issued under the Ordinance are payable solely from the Facilities Rentals payable under the Lease and amounts payable under the Guaranty. The Guaranty sets out a guaranty from United to the paying agent of all payments due under the bonds issued pursuant to the Ordinance.

United must pay Facilities Rentals to the Paying Agent – currently, HSBC Bank – "for the account of" the City in an amount equal to the principal, premium, if any, or interest on the bonds issued on a semi-annual basis.

Section 11.1(a) of the Lease provides that United's failure to pay Facilities Rentals when due constitutes a default under the Lease. Section 11.1(b) provides that United's failure "to make any payment required to be made by it hereunder" also constitutes a default. Section 11.2(a) then provides that one of the remedies available to the City in the event of a default by United is that the City may terminate the Lease and recover possession of the Leased Property.

Title to the Leased Property remained with the City. In addition, the term of the Lease is less than 80% of the reasonably expected economic life of the Facilities. United subleased a significant portion of the Leased Property to another entity and collected rent from the sublease under a rent payment structure that mirrors the rent structure of the Lease.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code. On March 21, 2003, United filed an Adversary Complaint, seeking a declaratory judgment that certain of its payment obligations related to airport improvements were not obligations arising under a "lease" pursuant to Section 365 of the Bankruptcy Code. Subsequently, all parties moved for summary judgment on the issue of whether the "lease" was a true lease, as opposed to a true lease and a financing arrangement.

On March 4, 2004, the bankruptcy court granted Appellee's motions for summary judgment. The bankruptcy court held that the Lease was a true lease for purposes of Bankruptcy Code § 365. The bankruptcy court also rejected United's argument that the Lease should be severed into two agreements: one (a true lease) governing its use of the airport real estate and another (a financing arrangement) providing for its repayment of bonds issued by the City.

United appeals the bankruptcy court's judgment to this Court, raising the following issues for review: (1) whether the Lease entered into by United and the City constituted a financing

arrangement as opposed to a true lease and (2) whether the financing portion of the Lease is severable from the lease portions of the Lease.

## LEGAL STANDARD

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (*Hoseman*). All of the facts and the inferences therefrom are viewed in a light most favorable to the nonmoving party. *Hoseman*, 322 F.3d at 473. Similarly, a bankruptcy court's interpretation of a statute is a question of law reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). The Court reviews the bankruptcy court's factual findings for clear error. *Hoseman*, 322 F.3d at 473.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

United argues that the bankruptcy court erred in determining that the Lease was a true lease for § 365's purposes.

Section 365(a) provides the trustee, or debtor-in-possession in Chapter 11 cases, the power to assume or reject unexpired leases. 11 U.S.C. § 365(a). Certain requirements are imposed when the trustee wishes to assume an unexpired lease under which there has been a default. The trustee

must cure the default, compensate any parties that have suffered pecuniary loss from the default, and provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b). Leases of nonresidential real property are deemed rejected unless assumed within sixty days after an order for relief unless the court, for cause, grants additional time during that sixty-day period. 11 U.S.C. § 365(d).

In order for Section 365 to apply, the lease between the parties must be a "true" or "bona fide" lease. *See In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1182 (9th Cir. 1988) (*Moreggia*); *In re Powers*, 983 F.2d 88, 89 (7th Cir. 1993) (deciding whether rental agreements were true leases) (*Powers*); *In re Lunan Family Restaurants*, 194 B.R. 429, 450 (N.D. Ill. 1996); *In re Hotel Syracuse, Inc.*, 155 B.R. 824, 838 (N.D.N.Y. 1993) (*Hotel Syracuse*).

The bankruptcy court applied the economic realities substance test in determining that the Facilities Lease was not a true or bona fide lease. In a different appeal to this Court addressing this same issue, this Court found that the bankruptcy court erred in applying the economic realities test in determining whether a lease, under facts similar to the instant case, was a true or bona fide lease. *See In re UAL*, 2004 WL 2609196 (04 C 2836 & 04 C 2837) (Nov. 18, 2004); *see also Powers*, 983 F.2d at 90; *In re Pillowtex, Inc.*, 349 F.3d 711, 716 (3rd Cir. 2003) (*Pillowtex*); *In re Sankey*, 307 B.R. 674, 678 (D. Alaska 2004); *In re Pittsburgh Sports Assoc. Holding Co.*, 239 B.R. 75, 83 (W.D. Pa. 1999) (*Pittsburgh Sports*); *In re Fox*, 229 B.R. 160, 164 (N.D. Ohio 1998); *In re DWE Screw Prod., Inc.*, 157 B.R. 326, 330 (N.D. Ohio 1993) (*DWE*) (collectively applying state law in determining whether a lease is a true lease for purposes of Section 365). In *In re UAL*, this Court held that, pursuant to applicable choice of law considerations, the bankruptcy court erroneously applied the economic realities test instead of the applicable state law in determining whether the

lease was a true or bona fide lease. *See In re UAL*, 2004 WL 2609196 at * 5. Accordingly, the bankruptcy court in the instant case erred when it applied the economic realities test in determining whether the Facilities lease was a true lease. However, as discussed below, the application of Colorado law does not alter the final ruling of the bankruptcy court that the Lease was a true lease.

Under Colorado law[1], whether a lease agreement is a true lease or one intended solely for security is determined by the intent of the parties at the time of the execution of the document. *See DSCO, Inc. v. Warren*, 829 P.2d 438, 440 (Colo. App. 1991) (*DSCO*). The intent of the parties is determined by reviewing all facts and circumstances of the transaction. *See DSCO*, 829 P.2d at 440.

The most important factor in distinguishing a lease from a secured transaction is whether the lessee obtains any equity in the leased property. *See In re Mesa Refining, Inc.*, 65 B.R. 724, 727 (D. Colo. 1986) (*Mesa*). Here, the lessor retained an economically significant interest in the property leased to United, and United retained *no* interest in the leased property. United concedes that it did not own, will not own, and cannot ever own any of the facilities leased to United. The Facilities Lease does not have an option to purchase at the end of the lease. United has retained *no* interest at the end of the lease. While United had some obligations indicative of ownership, such as payment of taxes, maintenance, and insurance -- generally referred to as a triple net lease -- the use of triple net leases are not unusual terms in ground leases. *See UAL*, 2004 WL 2609196 at * 6.

Other relevant factors include whether the lessee has an option to purchase at the expiration of the lease term and whether the lessor retains title to the property at all times. *See DSCO*, 829 P.2d at 441. Here, United did not have an option to purchase the Leased Property, and the lessor retained

---

[1]The parties agree that Colorado law is the state law to be applied to the Facilities Lease at issue *if* state law is to be applied.

title to the property at all times. Furthermore, because the term of the Lease is less than 80% of the reasonably expected economic life of the Special Facilities, at the end of the Lease, the property will continue to be useful to the City.

A review of the above factors demonstrates that United has failed to demonstrate that the Lease is not a true lease.

United also argues that the bankruptcy court erred in finding that the Lease is not severable. United contends that the Lease can be severed into a true lease -- the Grounds Rental -- and a financing arrangement -- the Facilities Rental.

The parties agree that the question of whether the Lease is severable must be determined under applicable state law because the Bankruptcy Code does not address this issue. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 389 (N.D. Tex.2003). The parties also agree that, by its terms, the Lease is to be interpreted according to Colorado law.

Under Colorado law, an agreement cannot be severed unless the language of the agreement manifests each party's intent to treat the agreement as divisible. *See Univex Int'l, Inc. v. Ortix Credit Alliance, Inc.*, 914 P.2d 1355, 1357 (Colo. 1996).

The plain language of the Lease demonstrates that the parties did not intend the Lease to be divisible. The Lease specifically defines the Leased Property as including the Grounds and the Facilities. There are over seventy references to "Leased Property" in the Lease. Furthermore, the default and remedies available under the Lease demonstrate the parties' intent to agree on one, integrated agreement with respect to the Ground and the Facilities. As mentioned above, the Lease provides that if United defaulted on either the Facilities Rentals or the Ground Rentals, the City had the right to evict United from *both* the Facilities and the Ground. In addition, although the amounts

to be paid by United for Ground Rentals and Facilities Rentals are separate and distinct amounts payable to different entities, the Lease clearly states that the trustee is being paid the Facilities Rentals "for the account of" the City.

United also argues that Colorado law requires that the two leases be separate agreements, citing to Ordinance 626 of the County and City of Denver. Ordinance 626 requires a "Net Rent Lease" for "Special Facilities" and a "second Net Rent Lease" for a Ground Lease. However, Ordinance 626 states that it "is intended to govern the issuance of, and establish general provisions relating to, the City's airport revenue bonds (*except Special Facilities Bonds . . .*)." (Emphasis added). Accordingly, Ordinance 626 is not relevant to the present Lease. Furthermore, Ordinance 712, which was adopted contemporaneously with the parties' entry into the Lease, provides for the Lease to contain Facilities Rentals *and* a Net Rental Lease. Thus, the controlling ordinance, Ordinance 712, provided for a single agreement.

Lastly, United belatedly argues that a finding that the financing portions are not severable is at odds with federal law because it is equivalent to a cross-default between two separate instruments. United did not present this argument to the bankruptcy court; and it is, therefore, waived on appeal. *See In re Image Worldwide, Ltd.*, 139 F.3d 574, 581 (7th Cir. 1998). Furthermore, even if the argument was not waived, the argument is without merit.

Courts have refused to enforce certain contract provisions that directly or indirectly restrict the assumption and assignment of executory contracts, including contracts that contain cross-default provisions between two contracts. *See, e..g., In re Sanshoe Worldwide Corp.*, 139 B.R. 585, 597 (S.D.N.Y. 1992) (*Sanshoe*). The single Lease at issue in the present case is one document, not two separate instruments as found in the cross-default cases cited by United. The Lease is a non-divisible

true lease; as such, there is no cross-default between two contracts. Furthermore, unlike the present single Lease, cross-default provisions that have been found to be unenforceable involved two or more separate, unrelated leases. *See e.g.,, Sanshoe*, 139 B.R. at 597.

## CONCLUSION

Based on the foregoing, the March 30, 2004 judgment of the bankruptcy court order, granting summary judgment in favor of Appellees, is affirmed.

Date: January 24, 2005

John W. Darrah, Judge
United States District Court